**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

EMMA J. ALDRIDGE,

      Plaintiff,

v.                                                                                    Case No. 3:06-CV-143-J-TEM

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

      Defendant.

_____

## ORDER AND OPINION

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits. Plaintiff seeks reversal of the Commissioner's decision with directions for processing of payment, or alternatively, reversal and remand of the decision for a further hearing. (Doc. #1, p. 2). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

### I. Procedural History

Plaintiff previously applied for Supplemental Security Income benefits, which was denied by an Administrative Law Judge on May 27, 1999. The Appeals Council denied review; therefore, the prior denial is res judicata on the issue of Plaintiff's disability through May 27, 1999. (Tr. 12). Plaintiff filed her current application for SSI benefits on February 28, 2003, alleging disability since November 30, 1994, due to back, neck, and shoulder

pain stemming from a motor vehicle accident, which occurred in 1989.[1]  (Tr. 45-48, 56).

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested and

received a hearing before Administrative Law Judge John D. Thompson, Jr. (the "ALJ"), on

October 28, 2004.  (Tr. 170-229).  In a decision issued June 18, 2005, the ALJ found

Plaintiff not disabled.  (Tr. 9-18).  The Appeals Council denied Plaintiff's request for review

on December 14, 2005 (Tr. 4-7), making the ALJ's decision the final decision of the

Commissioner.   20 C.F.R. §§ 416.1481; 422.210.[2]

## II. Background Facts

Plaintiff was fifty-nine years old at the time of the ALJ's decision.  (Tr. 13).  Plaintiff

has an eighth grade education and  past relevant work experience as a certified nursing

assistant ("CNA") and hotel housecleaner.  (Tr. 57, 62, 175, 177-79).  In 1989, Plaintiff was

involved in a motor vehicle accident and shortly thereafter underwent a cervical fusion

procedure.  (Tr. 97).  Plaintiff maintains that the cervical fusion was successful at the time;

however, over the years, pain in her neck and shoulder became progressively worse, which

resulted in her having to quit her job as a hotel housecleaner in 2002.  (Tr. 56, 97).

At the time of the ALJ's decision, Plaintiff suffered from status post fusion of the

cervical spine at C5-C6, mild degenerative disc disease, chronic obstructive pulmonary

disease ("COPD"), gastroesophageal reflux disease, and depression.  (Tr. 99, 101-04,

153).  Plaintiff's treating physician, Dr. Irena Assefa, examined Plaintiff on November 14,

---

[1] An individual cannot receive SSI benefits for any period prior to the month in which the SSI application is filed.  *See* 20 C.F.R. § 416.501.  Thus, the relevant period for deciding Plaintiff's case is the month in which she filed her SSI application (February 2003) and thereafter.  *See, e.g., Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993) (stating the proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date).

[2]   All references made to 20 C.F.R. will be to the 2006 edition unless otherwise specified.

2003 and found her to be generally normal and her lungs clear.  (Tr. 152-53).  Dr. Assefa further noted that Plaintiff's x-ray from 2002 was normal.  (Tr. 152).

On May 7, 2003, an x-ray taken of Plaintiff's lumbar spine showed no abnormalities, but the x-ray taken of Plaintiff's cervical spine showed status post fusion at C5-C6 and mild degenerative disc disease at C4-C5.  (Tr. 99).

On May 8, 2003, Plaintiff underwent a consultative evaluation with Dr. Robert Greenberg.  (Tr. 97-98).  Dr. Greenberg noted that Plaintiff suffered radiating pain through her right hip, which was aggravated by bending and lifting.  (Tr. 97).  He further noted that Plaintiff was taking Remeron (an anti-depressant) and Aspirin (a pain reliever), and that Plaintiff had some decreased range of motion in her cervical and lumbar spine along with decreased strength in both legs; however, her gait and station were normal.  (Tr. 98).  Dr. Greenberg stated that he felt Plaintiff would be unable to perform any type of work related activities that required heavy lifting or bending.  (Tr. 98).

Ten months later, on March 3, 2004, with no interim visits by Plaintiff since an office visit in November 14, 2003, and in response to Plaintiff's request that she write a letter so that Plaintiff could get food stamps, Dr. Assefa wrote a letter, stating that Plaintiff was  not able to work.  (Tr. 166).  Dr. Assefa wrote a single paragraph stating: "Ms. Emma Aldridge [Plaintiff] is a patient at our office.  She suffers from several medical problems, including chronic obstructive pulmonary disease, depression and osteoarthritis.  At this time the patient is unable to be gainfully employed."  (Tr. 166).  No further explanation was given by Dr. Assefa as to why Plaintiff was unable to be gainfully employed or as to what limitations the aforementioned medical conditions placed upon Plaintiff.

At the hearing, Plaintiff testified that she has arthritis that affects her neck, back, and shoulders.  (Tr. 183).  She stated that she suffers pain and stiffness that has gotten progressively worse over the years and that she takes Bextra, Tylenol, and BC powder as needed for pain–which she stated helped abate her symptoms of pain.  (Tr. 190, 202).  Plaintiff further stated that she has problems walking and that she cannot stoop for very long.  (Tr. 198).  In addition, Plaintiff stated that her daily activities included cleaning the house and cooking meals.  (Tr. 190-92).

After reviewing the medical evidence of record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. 18, Finding 5).  Specifically, the ALJ found that Plaintiff could "stand/walk six hours and sit two hours in an eight-hour workday, lift and carry 20 pounds occasionally and 10 pounds frequently, and occasionally bend, stoop, crouch, crawl, kneel, and climb." (Tr. 18, Finding 5).

Plaintiff testified that concerning her past relevant work as a hotel housecleaner at three various hotels, she had to vacuum swimming pools at one and flip mattresses at all three.  (Tr. 206, 214).  As performed, Plaintiff's job as a hotel housecleaner was at the heavy exertional level because she had to flip mattresses and clean swimming pools.  *See* 1 United States Dep't of Labor, *Dictionary of Occupational Titles* § DOT 323.687-018 (4th ed. 1991) (hereinafter referred to as "DOT" followed by the corresponding section number).

Vocational expert ("VE") Charles Heartsill testified that the job of a hotel housecleaner can be performed at two exertional levels–one light and the other heavy.  (Tr. 17, 206-09, 217-18); *see also* DOT §§ 323.687-014; 323.687-018 (at the heavy exertional level, this job is officially referred to as "Housecleaner," and at the light exertional

4

level, this job is officially referred to as "Cleaner, Housekeeper").  After being presented

with a hypothetical question encompassing Plaintiff's RFC and additional limitations on

bending and stooping, the VE further testified that Plaintiff could perform her past relevant

work as a Housecleaner at the light exertional level (*i.e.* Cleaner, Housekeeper) consistent

with the *Dictionary of Occupational Titles*.  (Tr. 17, 206-09, 217-18); *see also* DOT 323.687-

014.

Based on Plaintiff's RFC, testimony from the VE, and the job descriptions in the

*Dictionary of Occupational Titles*, the ALJ found that Plaintiff could return to her past

relevant work, as a Cleaner, Housekeeper, at Step 4 of the sequential evaluation process.

(Tr. 17, 18, Findings 6 & 7).  Thus, a determination of not disabled was made–from which,

Plaintiff now appeals.

### III. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or

she is unable to engage in substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to either result in death

or last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for

determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R.

§ 416.920 (a) - (f); *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997).  Plaintiff

bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's

review is generally limited to determining whether the ALJ applied the correct legal

standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the

findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703

F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments.   *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")

It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 416.912 (a),(c).  It is the functional limitation or restrictions caused by medical impairments and their related symptoms, not the impairments themselves, which may affect an individual's ability to work.  20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

## IV. Analysis

**A. Plaintiff's Ability to Return to Her Past Relevant Work**

Plaintiff's first argument is that the ALJ  erred in finding that she could return to her past relevant work.  In the instant case, the ALJ found Plaintiff's allegations that she was precluded from all work activity not fully credible due to inconsistencies with the medical evidence, Plaintiff's reported daily activities, and VE testimony. (Tr. 16-17).  As mentioned above, treatment records from Dr. Assefa were largely normal.   (Tr. 152-53).  While a diminished range of motion in the neck and shoulders was noted by Dr. Assefa, upper and

lower extremity strength were normal without edema.  (Tr. 152-53).

On May 8, 2003, Dr. Greenberg examined Plaintiff and stated that Plaintiff would be unable to perform any type of work-related activities that required heavy lifting or bending. (Tr. 98).  State agency medical consultants Donald W. Morford, M.D. (Tr. 105-12) and I.B. Price, M.D. (Tr. 128-35) found that Plaintiff was capable of performing medium work that also did not require heavy lifting or bending.   Although the ALJ is required to give consideration to the opinions of examining physicians and non-examining state agency medical consultants, it is the ALJ who considers the totality of the evidence in arriving at a conclusion on residual functional capacity and the ultimate question of disability or non-disability.  *See* 20 C.F.R. §§ 416.927; 416.946.

At the fourth step of the sequential evaluation process, a plaintiff must show that he or she is unable to perform his or her past kind of work, not merely that he or she is unable to perform a specific job held in the past.  *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986) (finding, although Plaintiff showed he could not perform his past job, he failed to demonstrate that he could not perform such jobs in general).  Here, Plaintiff was found to have past relevant work experience as a Housecleaner, as defined by the *Dictionary of Occupational Titles*.  This job was performed by Plaintiff at the heavy work level, due to the fact that it involved flipping mattresses and cleaning swimming pools.  *See* DOT § 323.687-018.

The VE reviewed the record and testified that an individual of Plaintiff's age, education, experience, and RFC was capable of performing the duties of Cleaner, Housekeeping, as defined by the *Dictionary of Occupational Titles*.  (Tr. 204-10); *see also* DOT § 323.687-014.  The Court finds the job of Cleaner, Housekeeping, as defined by the

*Dictionary of Occupational Titles*, is the same kind of work as Housecleaner–except it is performed at the light exertional level as opposed to the heavy exertional level. *See* DOT §§ 323.687-014; 323.687-018. Furthermore, a VE's testimony can establish that there are jobs that a person with Plaintiff's determinable limits can perform. *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987); *McSwain*, 814 F.2d at 619-20; *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).

Additionally, Plaintiff argues that the ALJ failed to consider the duties of Plaintiff's past work and failed to evaluate Plaintiff's ability to perform those duties. Plaintiff relies on *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) and *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987) to support her contentions. These cases, however, are distinguishable from the facts of this case. In *Lucas*, the court found that the ALJ failed the duty to fully develop the record because it did not contain a detailed description of the duties and responsibilities of the plaintiff's past relevant work. *Lucas*, 918 F.2d at 1574. In the instant case, as mentioned above, the ALJ has developed the record concerning Plaintiff's various job duties at her past relevant work.

Likewise, in *Schnorr,* the court found that the ALJ erred in finding that since the plaintiff could perform a wide range of light work, he could return to his past relevant work as an owner-operator of a service station, even though the ALJ never developed the record as to what the plaintiff's duties and responsibilities were as an owner-operator of a service station. *Schnorr*, 816 F.2d at 581. Here, the Court finds the record is fully developed in regards to Plaintiff's duties and responsibilities as a Housecleaner.

Plaintiff further argues the ALJ ignored her testimony about the duties of her past work and that she has never performed the job of Cleaner, Housekeeper at the light

exertional level (Doc. #23, p. 10); however, Plaintiff herself stated on a supplemental application form that she worked at the Jameson Inn, Waycross, Georgia as a "housekeeper" responsible for cleaning rooms, with no mention of flipping mattresses. (Tr. 78).  Thus, the Court finds the ALJ did not ignore Plaintiff's testimony about the duties of her past work and that Plaintiff has previously performed the job of Cleaner, Housekeeper, as defined in the *Dictionary of Occupational Titles*, within the range of light work.  (Tr.  78).

Although the Court questions how someone could perform the job of Cleaner, Housekeeper by only occasionally bending (*e.g.* making a bed and cleaning a bathroom both require bending, and these activities would have to be done in multiple rooms, numerous times per day), the ALJ, however, was entitled to rely on the testimony of the VE in finding that Plaintiff could return to her past relevant work.  20 C.F.R. § 416.960(b)(2).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards*, 937 F.2d at 584 n.3.  Here, substantial evidence, in the form of inconsistencies with the medical evidence, Plaintiff's reported daily activities, and the VE's testimony, supports the ALJ's decision.  Therefore, the ALJ did not err, as a matter of law, by finding Plaintiff could return to her past relevant work as a Cleaner, Housekeeper, as defined in the *Dictionary of Occupational Titles*.

**B. Whether a Complete and Accurate Hypothetical Question was Posed to the Vocational Expert**

Plaintiff's next argument is that the ALJ did not pose a complete and accurate hypothetical question to the VE regarding Plaintiff's limitation on bending.  At the hearing, the ALJ asked the VE what jobs a hypothetical person with Plaintiff's age, education, and work experience, and who could only occasionally bend, could perform.  (Tr. 208-09).  To which, the VE responded that the hypothetical individual could perform the job of Cleaner, Housekeeper at the light exertional level.  (Tr. 208-09); *see also* DOT § 323.687-014.

Contrary to Plaintiff's argument, the ALJ did pose a complete and accurate hypothetical question to the VE because it included Plaintiff's RFC limitation of occasional bending.  Although several medical doctors stated that they believed Plaintiff should avoid bending, it is the ALJ who determines a plaintiff's RFC.  20 C.F.R. § 416.945(3).  The ALJ, in the instant case, found Plaintiff's claimed limitations were not completely supported by the medical evidence of record; therefore, the ALJ was under no duty to pose a hypothetical question to the VE based on the statements made by various doctors.  The ALJ is only required to pose an accurate hypothetical question in regards to the RFC the ALJ has determined–not in regards to specific doctor statements that may be in the record.

Plaintiff relies on *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001) and *Mand v. Apfel*, 2001 WL 267457 (M.D. Fla. Mar. 9, 2001) to support her contention that the ALJ posed an inaccurate hypothetical to the VE.  These cases are distinguishable, however, because the administrative law judges in those cases completely left out limitations caused by conditions supported by the record when they posed hypothetical questions to the testifying vocational experts.  By contrast, the ALJ, in the instant case,

included in his hypothetical the fact that Plaintiff can only occasionally bend. Therefore, the Court finds that the ALJ did pose a complete and accurate hypothetical question to the VE by including Plaintiff's limitation on bending, as found in Plaintiff's RFC.

**C. Plaintiff's Subjective Complaints of Disabling Pain**

An additional argument, propounded by Plaintiff, is that the ALJ failed to properly weigh Plaintiff's subjective complaints of pain and improperly discredited her testimony regarding her subjective complaints. The Eleventh Circuit pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). "After considering a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)); *see also Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (finding the credibility of a claimant's testimony is the duty of the Commissioner.)

Additionally, the Regulations state that when the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the pain alleged, the Commissioner must then evaluate the intensity and persistence of the pain to determine how it limits the claimant's capacity for work. 20 C.F.R. § 416.929(c).

The record does not substantiate Plaintiff's allegations that she is unable to perform her past relevant work because of pain. The medical evidence indicates that Plaintiff has

impairments that were deemed severe within the meaning of the Social Security Act (the "Act"); however, they are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 18, Findings 2-3).  The evidence shows that no physician found Plaintiff's pain to be of disabling severity.

Plaintiff testified that she took mostly over-the-counter medications such as Tylenol and BC powder for pain (which Plaintiff stated helped to abate her symptoms).  (Tr. 16, 190).  Conditions amenable to treatment or adequately controlled by medication are generally not considered disabling.  *See, e.g., Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999) (ALJ's finding that the plaintiff was not disabled was supported by the fact that plaintiff's asthma and diabetes were controlled successfully by medication); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (finding lack of regular use of potent pain medication militates against allegations of constant and severe pain).

Plaintiff indicated that she attended church, went shopping, performed household chores (that included making beds, sweeping, and cooking), and visited with family and friends.  (Tr. 16, 190-94).  These daily activities do not comport with an individual suffering from disabling pain.  *See* 20 C.F.R. § 416.929(c)(3)(i) (pattern of daily living is an important indicator of the intensity and persistence of symptoms); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ( finding the ALJ may consider evidence regarding a claimant's daily activities during the fourth step of the sequential evaluation process).

The ALJ discredited Plaintiff's pain testimony because the evidence of record reveals inconsistencies between Plaintiff's testimony and the objective medical evidence.  Contrary to Plaintiff's assertions, the Court finds that the ALJ, in the instant case, properly discredited Plaintiff's pain testimony.  First, the ALJ noted that, despite Plaintiff's allegations

of multiple medical impairments, Plaintiff has had very limited medical treatment since the date of her current SSI application. (Tr. 16).  Second, the ALJ noted that, despite Plaintiff's claim of having hand numbness, Dr. Greenberg's exam showed fine manipulation of the hands to be normal.  (Tr. 16).  Lastly, the ALJ noted that, despite Plaintiff's complaints of breathing difficulties, respiratory exams showed her to have clear lungs.  (Tr. 16).

If an ALJ gives three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony.  *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).  Therefore, the Court finds that the ALJ, in the instant case, properly discredited Plaintiff's subjective complaints of pain.

## D. Plaintiff's After Acquired Evidence

Plaintiff's final argument is that the Court should remand the case under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider Plaintiff's after acquired evidence.  Remand under sentence six is appropriate, however, only if the plaintiff shows that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so there is a reasonable probability that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level.  *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985); *see also* 42 U.S.C. § 405(g).

On July 1, 2005, shortly after the ALJ's decision on June 18, 2005, Plaintiff filed a new application for disability, alleging the same impairments as previously alleged.  In October 2005, Plaintiff was treated at Flagler Hospital for severe osteoarthritis of the cervical and lumbosacral spine, and a CT scan and MRI showed severe arthritic changes in Plaintiff's cervical spine.  Subsequently, a new ALJ found Plaintiff disabled as of July 1,

2005, due to degenerative disc disease of the cervical spine, arthritis, and dysthymia (a mood disorder).  (Doc. #23, p. 23).

Plaintiff contends that the new medical evidence from October 2005 meets the aforementioned *Cherry* factors and that the case should be remanded.  (Doc. #23, p. 22). Here, the Court finds that Plaintiff's new medical records are new, in that, they are subsequent to the ALJ's June 18, 2005 decision.  The Court also finds Plaintiff had good cause for not providing the evidence at her initial proceeding because the evidence did not exist at that time.  The relevant issue, under the circumstances of this case, is whether Plaintiff's newly acquired CT scan and MRI are material, such that there is a reasonable probability that it would change the administrative result.

New evidence must relate to the time period on or before the date of the ALJ's decision.  20 C.F.R. § 416.1470.  Moreover, a plaintiff bears the burden to provide the medical evidence to prove he or she suffers from a disabling physical condition.  20 C.F.R. § 416.912(a),(c).  Here, Plaintiff's x-ray from 2002 was normal and Plaintiff's x-ray from 2003 showed status post fusion at C5-C6 and mild degenerative disc disease at C4-C5 with some osteophyte formation.  (Tr. 99, 158). The ALJ found that these x-rays along with the other evidence provided by Plaintiff, simply did not substantiate her claim of total disability.

Furthermore, in an unpublished opinion that this Court finds persuasive,[3] the Eleventh Circuit held that "With a degenerative disease, in the absence of repeated tests, the extent of the progression of the disease at any given time is not known.  Thus, there

---

[3] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

is no way of knowing whether the new evidence relate[s] to the complaints relative to the time period before the ALJ." *Archer v. Comm'r of Soc. Sec.*, No. 05-16045, 2006 WL 988483, at *82 (11th Cir. Apr. 14, 2006). *Cf. Hyde v. Bowen*, 823 F.2d 456 (11th Cir. 1987) (remanding because new evidence was material when new reports offered objective medical explanation *for previously unexplained* complaints of pain) (*emphasis added*).

Here, Plaintiff's new evidence does not explain a previously unexplained complaint of pain. The record reflects that Plaintiff suffered mild degenerative disc disease with some osteophyte formation at the time of the ALJ's decision; however, the ALJ found that even with these conditions, Plaintiff was able to return to her previous kind of work at a light exertional level. Plaintiff's new medical evidence may be relevant to the deterioration of Plaintiff's conditions, but it is not clear that it is relevant to the initial denial of benefits by the ALJ. *See Archer*, 2006 WL 988483, at *82.

Thus, due to the degenerative nature of Plaintiff's conditions, the Court finds that it cannot be said that Plaintiff's after acquired evidence would change the outcome of this case relative to the time period before the ALJ. Therefore, the Court does not find that a sentence six remand, pursuant to 42 U.S.C. 405(g), is appropriate under the circumstances of this case.

## V. Conclusion

Review of the record as a whole reveals substantial evidence supports the ALJ's finding of non-disability. Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close

the file.  Each party shall bear its own fees and costs.

        **DONE AND ORDERED** at Jacksonville, Florida this  25th  day of September, 2007.

Copies to all counsel of record
          and *pro se* parties, if any

                    **THOMAS E. MORRIS**
                    United States Magistrate Judge